## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| RANDY M. MARTINEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:18-cv-0465-JEO |
| | ) | |
| CITY OF BIRMINGHAM, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**[1]

In this action, Plaintiff Randy M. Martinez brings claims against his employer, the City of Birmingham, under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), and 42 U.S.C. §§ 1981 ("Section 1981").  (Doc. 16).[2]  Specifically, Plaintiff alleges he was discriminated and retaliated against because of his race and national origin.  (*Id.*).  Defendant moves to dismiss the amended complaint[3] under Federal Rule of Civil Procedure

---

[1] The action was originally assigned to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and the court's general order of reference dated January 2, 2015.  The parties have since consented to an exercise of plenary jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  (Doc. 11).

[2] References to "Doc(s). ___" are to the document number(s) of the pleadings, motions, and other materials in the court file, as compiled and designated on the docket sheet by the Clerk.

[3] This is the second motion to dismiss filed by Defendant.  The court granted the first motion, but gave Plaintiff the opportunity to file an amended complaint to correct the deficiencies in his original complaint.  (Doc. 15).  Plaintiff filed his amended complaint on October 30, 2018.  (Doc. 16).

12(b)(6) for failure to state a claim.  (Doc. 17).  For the reasons that follow, the motion to dismiss is due to be granted in part and denied in part.

## I.    LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) authorizes a motion to dismiss all or some of the claims in a complaint on the ground that its allegations fail to state a claim upon which relief can be granted.  That provision is read in light of Federal Rule of Civil Procedure Rule 8(a)(2), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the  . . . claim is and the grounds upon which it rests," *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  The court is required to accept the well-pled factual allegations of the complaint as true and give the plaintiff the benefit of all reasonable factual inferences.  *See Hazewood v. Foundation Financial Group, LLC*, 551 F.3d 1223, 1224 (11th Cir. 2008).  However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*quoting Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").  Nor is it proper to assume that the plaintiff can prove facts it has

not alleged or that the defendants have violated the law in ways that have not been alleged. *Twombly*, 550 U.S. at 563 n.8 (citing *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 526 (1983)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*, 550 U.S. at 555 (citations, brackets, and internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* Thus, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *i.e.*, its "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citations omitted). "[I]n practice, a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984) (internal quotation marks omitted; emphasis and omission in original)).

## II.    FACTUAL ALLEGATIONS[4]

Plaintiff Martinez, a Hispanic male of Mexican origin, began his employment with the City of Birmingham in November 1998 as a police officer. (Doc. 16 ¶¶ 16, 19).  The City of Birmingham's workforce is made up of a relatively small percentage of Hispanic/Mexican Americans.  (*Id.* ¶ 39).  Plaintiff is currently employed as a sergeant and has been a supervisor for over seven years. (*Id.* ¶¶ 19, 21).  Plaintiff's direct supervisor is Captain Nashonda Howard, an African American female.  (*Id.* ¶ 22).  Plaintiff contends Captain Howard has subjected him to a hostile work environment, verbal abuse, harassment,[5] and intimidation because of his race and national origin.  (*Id.*).

On January 18, 2017, Plaintiff was in a meeting with Captain Howard and Lieutenant Donald Gary, an African American male.  (*Id.* ¶ 23).  During that meeting, Captain Howard gave Plaintiff an illegal order to "dispose of cases with dispositions from officers no longer" with the Birmingham police department. (*Id.*).  She instructed Lieutenant Gary to ensure that Plaintiff followed the order and said she wanted "20 cases a week."  (*Id.*).  On January 31, 2017, Plaintiff

---

[4] The factual allegations contained in this section are based upon the well-pled factual allegations of the amended complaint, which, consistent with the applicable standard of review, are taken as true, drawing all reasonable inferences in Plaintiff's favor.  Thus, these are the background facts for the purposes of the motion only; they may not be the actual facts.

[5] Plaintiff alleges his supervisors continually harassed him because he could not speak Spanish like other Latino/Mexican Americans.  (Doc. 16 ¶ 42).

requested to meet with Chief A.C. Roper, an African American male, about the way he was being treated by Howard and the illegal order. (*Id*. ¶ 24).[6]

On February 6, 2017, Plaintiff met with Captain Howard and Deputy Chief Irene Williams, an African American female. (*Id*. ¶ 25). Captain Howard told Plaintiff all paperwork that "needs to be forwarded up through the chain of command" needed "to go through her." (*Id*.). Deputy Williams also questioned Plaintiff about the dispositions Howard ordered Plaintiff to accomplish. (*Id*.).

The next day, on February 7, 2017, Plaintiff was notified by an officer under his supervision there was inventory missing from the property room. (*Id*. ¶ 26). The missing inventory was $2,318.00. (*Id*.). Plaintiff immediately opened an investigation pursuant to the City of Birmingham Rules and Regulations. (*Id*.).

On February 9, 2017, Plaintiff was involuntarily assigned to the radio room. (*Id*. ¶ 27). The next day he was involuntarily assigned to report review. (*Id*. ¶ 28). Additionally, Plaintiff alleges at some unspecified time he was replaced as the supervisor over the property room by Sergeant Ronald Crumbley, an African American male, "who began illegally clearing the cases as ordered by Howard." (*Id*. ¶ 86).

Plaintiff notified the proper chain of command regarding the missing money from the property room on February 13, 2017. (*Id*. ¶ 29). On February 16, 2017,

---

[6] It is unclear whether this meeting every occurred. (*See* Doc. 16 ¶¶ 24, 52, 75, 82).

Captain Howard and Greenberg[7] called Plaintiff into a "closed-door meeting" where he "was written up for violating the City of Birmingham Police Department's Rules and Regulations regarding an 'Unusual Occurrence.'" (*Id*. ¶ 30). Plaintiff denies he violated the rules. (*Id*.). Additionally, during this meeting, Captain Howard told Plaintiff he could no longer work any overtime and was ordered to only work 8-hour days. (*Id*. ¶ 31). Captain Howard further stated that he could only work overtime if he made a formal request and that request was approved in advance. (*Id*.). Plaintiff asserts this restriction was only enforced against Plaintiff. (*Id*.).

Plaintiff filed a Charge of Discrimination with the EEOC on March 1, 2017. (*Id*. ¶ 32). Defendant was notified of Plaintiff's EEOC charge on or about March 6, 2017. (*Id*. ¶ 33). Defendant provided a response to the EEOC charge on April 1, 2017, stating it has completed an internal investigation regarding the charge. (*Id*. ¶ 34). "Any internal investigation conducted by the Defendant would begin and end with the Chief of Police, A.C. Roper." (*Id*. ¶ 35).

On May 3, 2017, Plaintiff was called into a "closed-door meeting" with Deputy Williams regarding a request for overtime approval Plaintiff submitted on April 24, 2017. (*Id*. ¶ 36). Plaintiff's request for overtime was denied. (*Id*. ¶ 37). Other similarly situated African American sergeants, in particular Sergeant Teresa

---

[7] The amended complaint does not specify who Greenberg is.

Colston and Sergeant Ronald Crumbley, were allowed to work overtime. (*Id*. ¶ 38).

Plaintiff alleges he "is a good employee with many accolades and accomplishments with the City and is well qualified to hold his supervisory position with the City." (*Id*. ¶ 20). The City of Birmingham has never outwardly acknowledged Plaintiff for any of his "long list of accolades." (*Id*. ¶ 40). For example, although Plaintiff was the first Latino/Mexican American to be promoted to sergeant in the City of Birmingham Police Department, he was not recognized in the 2016 Birmingham Police Department yearbook with other historically first races and genders acknowledged. (*Id*.).

Finally, at some unspecified time during his employment, Plaintiff lost the use of a take home car. (*Id*. ¶ 42).

## III. DISCUSSION

Defendant contends Plaintiff's amended complaint is due to be dismissed because it fails to state a cognizable claim for discrimination and/or retaliation. (Doc. 17 at 3-7). The court first addresses Plaintiff's discrimination claims and then moves to his retaliation claims.

### A. Discrimination Allegations

"Disparate-treatment cases present 'the most easily understood type of discrimination,' *Teamsters v. United States*, 431 U.S. 324, 335, n.15 (1977), and

occur where an employer has 'treated [a] particular person less favorably than others because of' a protected trait. *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 985-86 (1988)." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). A disparate treatment plaintiff must establish "that the defendant had a discriminatory intent or motive" for taking a job-related action. *Id.* (quoting *Watson*, 487 U.S. at 986). Such a plaintiff must also establish that a challenged employment action was materially adverse, viewed objectively from the perspective of a reasonable employee. *See Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238-40 (11th Cir. 2001); *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006) (discussing "material adversity" requirement in the context of Title VII's anti-retaliation provision, 42 U.S.C. § 2000e-3(a)).

A Title VII complaint need not allege facts sufficient to make out a classic *McDonnell Douglas*[8] prima facie case, but it must provide enough factual matter, taken as true, to plausibly suggest intentional discrimination based on a protected characteristic. *See Edwards v. Prime, Inc.*, 602 F.3d 1276, 1300-01 (11th Cir. 2010); *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1270 (11th Cir. 2004). A plaintiff may generally do so by alleging facts supporting that the employer treated him less favorably than a similarly situated individual outside his protected class, *see Faulk v. City of Orlando*, 731 F.2d 787, 790 (11th Cir. 1984); *Glover v.*

---

[8] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

*Donahoe*, 626 F. App'x 926, 931 (11th Cir. 2015);[9] *Wells v. Willow Lake Estates, Inc.*, 390 F. App'x 956, 959 (11th Cir. 2010), or by similarly alleging that the employer replaced him with, or passed him over for an employment benefit or opportunity in favor of, someone outside of his class. *See Jacobs v. Biando*, 592 F. App'x 838, 841 (11th Cir. 2014); *Hughley v. Upson Cty. Bd. Of Commissioners*, 696 F. App'x 932, 935-36 (11th Cir. 2017). However, a plaintiff may also survive a motion to dismiss by pleading "a convincing mosaic" of circumstances, *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011), that do not involve such a comparator but still otherwise raise an inference of discriminatory intent. *See El-Saba v. University of S. Ala.*, 2015 WL 5849747, *13, 18 (S.D. Ala. Sept. 22, 2015); *Arafat v. School Bd. Of Broward Cty.*, 549 F. App'x 872, 874 (11th Cir. 2013) (stating on review of a Rule 12(b)(6) dismissal that judgment for the defendant is appropriate "[i]f a plaintiff fails to show the existence of a similarly-situated employee [and] no other plausible allegation of discrimination is present." (*citing Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)); *cf. Smith, supra* (applying a similar standard to assess the sufficiency of the plaintiff's non-comparator evidence to raise a necessary prima facie inference of discriminatory intent at summary judgment); *Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1255-56 (11th Cir. 2012) ("[A] plaintiff may use non-comparison

---

[9] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

circumstantial evidence to raise a reasonable inference of intentional discrimination and thereby create a triable issue."). Such an inference might be created, for example, by allegations regarding "the employer's criticism of the plaintiff's performance in . . . degrading terms" that reference the plaintiff's protected characteristic, "invidious comments about others in the employee's protected group, … or the sequence of events leading to the plaintiff's discharge." *El-Saba*, 2015 WL 5849747 at *13 (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015)).

## 1. Count One – Race Discrimination

In count one of his amended complaint, Plaintiff alleges he was discriminated against in violation of Title VII and § 1981. (Doc. 16 at 9-13). Plaintiff claims he endured unlawful disparate treatment by virtue of the following: (1) he was assigned to the radio room and report review, [10] (*id.* ¶¶ 55, 56); (2) he was written up for violating the City of Birmingham's rules and regulations regarding an "unusual occurrence" (*id.* ¶ 58); (3) he no longer was able to receive

---

[10] In the retaliation section of his complaint, Plaintiff describes these changes in work assignments as a demotion:

> Plaintiff was retaliated against by removing him from the department he was in charge of to a less distinguished job with a less distinguished title. Outwardly these moves also appear as a "demotion" of the Plaintiff to his fellow officers. The moves have significantly less material responsibilities as the position the Plaintiff had in the property room.

(Doc. 16 ¶ 93).

overtime with a formal request approved in advance, (*id*. ¶ 59); (4) he lost the use of a take home car, (*id*. ¶ 64); and (5) his accomplishments, including being the first Latino/Mexican American to be promoted to Sergeant in the city, have not been outwardly acknowledged, (*id*. 66). Defendant argues Plaintiff's allegations of discrimination fail to state a claim.

"[N]ot everything that makes an employee unhappy" is actionable under federal civil rights statutes prohibiting discrimination in employment. *Higdon v. Jackson*, 393 F.3d 1211, 1219 (11th Cir. 2004) (*quoting Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1449 (11th Cir. 1998) (citations and quotations omitted)). Rather, while a challenged action need not necessarily have economic consequences, it will be cognizable as unlawful discrimination only if it works "a *serious and material* change in the terms, conditions, or privileges of employment," judged objectively from the perspective of a reasonable employee. *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238-40 (11th Cir. 2001) (emphasis original); *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006) (discussing "material adversity" in the context of Title VII's anti-retaliation provision, 42 U.S.C. § 2000e-3(a)).

The court concludes that Plaintiff has pled sufficient facts from which to infer that at least some of the negative treatment he cites may amount to adverse employment action. That is certainly the case with respect to actions that allegedly

resulted directly in the denial of additional pay. *See Bass v. Bd. of Cty. Comm'rs, Orange Cty., Fla.*, 256 F.3d 1095, 1118 (11th Cir. 2001) ("[A]ctions which deprived [the plaintiff] of compensation which he otherwise would have earned clearly constitute adverse employment actions for purposes of Title VII"); *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1561 (11th Cir. 1986) (no amount of diminished pay can be written off as beyond Title VII's protections on the ground that such loss was "*de minimis*"). In particular, Plaintiff's claims that he was denied overtime and that he lost the use of a take home car sufficiently allege adverse employment actions for purposes of Title VII and § 1981.

Additionally, with regard to the work assignments, Plaintiff contends he was assigned to the radio room for one day and the next day was assigned to report review.[11] (Doc. 16 ¶¶ 55, 56). Plaintiff alleges it was a "less prestigious job with a less distinguished title," "appear[ed] as a demotion" to his fellow officers, and had less responsibilities then his position in the property room. (Doc. 16 ¶ 93). This is exactly the type of claim that "[o]ur circuit does not favor." *Kidd v. Mando American Corp.*, 731 F.3d 1196, 1203 (11th Cir. 2013). The Eleventh Circuit has explained:

> "Work assignment claims strike at the very heart of an employer's business judgment and expertise because they challenge an employer's ability to allocate its assets in response to shifting and

---

[11] It is unclear from the allegations of the amended complaint whether Plaintiff was assigned to report review for more than the one day specified.

competing market priorities." *Davis*, 245 F.3d at 1244. And it is by now axiomatic that "Title VII is not designed to make federal courts sit as a super-personnel department that reexamines an entity's business decisions," *id*. at 1245 (internal quotation marks omitted) (citing *Elrod v. Sears, Roebuck & Co*., 939 F.2d 1466, 1470 (11th Cir. 1991)).

*Id*. at 1203-04. As a result, "[i]n the vast majority of instances, … an employee alleging a loss of prestige on account of a change in work assignments, without any tangible harm, will be outside the protection afforded by Congress in Title VII's anti-discrimination clause." *Trask v. Secretary, Dep't of Veterans Affairs*, 822 F.3d 1179, 1194 (11th Cir. 2016) (quoting *Davis*, 245 F.3d at 1245).

The court harbors doubt about whether Plaintiff's alleged changes in his work assignments and duties suggests an adverse employment action under Eleventh Circuit standards. Although Plaintiff states he was replaced as the supervisor in the property room, Plaintiff does not claim that the changed work assignments altered his position as a sergeant, increased the hours he worked, or carried any loss in pay or advancement opportunities. The Eleventh Circuit has rejected similar claims for failure to establish an adverse employment action. *See Kidd*, 731 F.3d at 1203-04 (rejecting a "demotion claim . . . grounded on a loss of supervisory responsibility" alone for lack of an adverse employment action); *Edwards v. Ambient Healthcare of Ga., Inc*., 674 F. App'x 926, 930 (11th Cir. 2017) (finding the plaintiff "did not allege that she suffered a materially adverse action" where she "did not allege that [the employer] cut her pay, took away her

title, or did anything other than make her existing job duties more difficult.").  That

Nevertheless, the court will assume, for the purposes of this motion only, that these

allegations are sufficient at this stage to support the existence of an adverse

employment action.

The court now turns to Plaintiff's allegation that he was written up for

allegedly violating the unusual occurrences rule and regulation.   "Negative

performance evaluations, standing alone, do not constitute adverse employment

action," *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1261 (11th Cir. 2001), and

"courts are wisely reluctant to treat job performance memoranda as actionable . . .

where they do not trigger any more tangible form of adverse action such as a loss

in benefits, ineligibility for promotional opportunities, or more formal discipline,"

*Davis*, 245 F.3d at 1241; *see also Brown v. Snow*, 440 F.3d 1259, 1265 (11th Cir.

2006).  Likewise, "memoranda of reprimand or counseling that amount to no more

than a mere scolding, without any following disciplinary action, do not rise to the

level of adverse employment actions" either.   *Davis*, 245 F.3d at 1236.

Accordingly, "[t]he reprimand of an employee does not constitute an adverse

employment action when the employee suffers no tangible harm as a result."

*Summerlin v. M & H Valve Co.*, 167 F. App'x 93, 97 (11th Cir. 2006); *accord

Perry v. Rogers*, 627 F. App'x 823, 832-33 (11th Cir. 2015); *Barnett v. Athens

Reg'l Med. Ctr. Inc.*, 550 F. App'x 711, 713 (11th Cir. 2013); *Wallace v. Georgia

*Dep't of Transp.*, 212 F. App'x 799, 801 (11th Cir. 2006). However, once a negative performance evaluation is used to justify the denial of a raise or some other form of compensation, the evaluation may be deemed an adverse employment action. *See Crawford v. Carroll*, 529 F.3d 961, 971-72 (11th Cir. 2008); *Gillis v. Georgia Dep't of Corr.*, 400 F.3d 883, 888 (11th Cir. 2005).

The amended complaint does not allege the write-up Plaintiff received for allegedly violating the unusual occurrence rule and regulation resulted in any type of disciplinary action, loss of pay, denial of a raise or the like. (*See* Doc. 16 ¶ 58). Instead, the allegations are more akin to "a mere scolding" without any tangible harm as a result. As such, the write up standing alone does not constitute an adverse employment action, and Plaintiff's race discrimination claim based thereon is due to be dismissed. That being said, the amended complaint alleges that in the same meeting where Plaintiff received the write-up, he was also informed that he could not work overtime without a formal request and advanced approval. (*Id.* ¶ 59). To the extent that Plaintiff can establish that these two actions were linked, he may be able to show that the write-up was an adverse employment action.

The last adverse employment action alleged by Plaintiff is his lack of recognition by the city for his accomplishments, including not being acknowledged in the latest Birmingham Police Department yearbook as the first Latino/Mexican American to be promoted to sergeant. (*Id.* ¶ 66). This allegation does not amount

to an adverse employment action as a matter of law.  It certainly does not equate with "a *serious and material* change in the terms, conditions, or privileges of employment," judged objectively from the perspective of a reasonable employee. *Davis.*, 245 F.3d 1238-40 (emphasis in original).  Instead, being "snubbed at the office awards ceremony is the kind of *de minimis* employment hand-slap which falls beneath the radar screen of Title VII."  *Goodridge v. Astrue*, 2009 WL 10666376, at *7 (N.D. Ga. 2009) (quoting *Pedicini v. United States*, 480 F. Supp. 2d 438, 454 (D. Mass. 2007) (internal marks and footnote omitted)).  Accordingly, Plaintiff's race discrimination claims are **DISMISSED** as they relate to his lack of recognition.

Finally, Plaintiff states within his discrimination allegations that Howard subjected him to "verbal abuse, harassment and intimidation because of his race." (Doc. 16 ¶ 50).  Those allegations are simply too vague to establish an adverse employment action and fail to give Defendant fair notice of the grounds of the claims.  There are absolutely no details regarding the alleged "harassment." Plaintiff has not pled facts from which it might be reasonably inferred that this "harassment" had any material impact on his employment.  As such, it does not qualify an adverse employment action. *See Davis*, 245 F.3d at 1240-41; *Garrett v. University of Ala. at Birmingham Bd. of Trs*., 507 F.3d 1306, 1309, 1316 (11th Cir. 2007); *see also Edwards v. Ambient Healthcare of Ga., Inc*., 674 F. App'x 926,

930 (11th Cir. 2017) ("Criticisms" and "negative evaluations" are not themselves actionable adverse employment actions). Accordingly, Plaintiff's race discrimination claims are **DISMISSED** to the extent they are founded on general and unspecified "harassment."

### 2. Count Two – National Origin Discrimination

Plaintiff alleges discrimination on the basis of national origin in violation of both Title VII and § 1981. (Doc. 16 at 14). Before discussing the specific allegations, the court notes that § 1981's protections do not extend to discrimination claims based "solely on the place or nation . . . of origin." *Saint Francis College v. Al–Khazraji*, 481 U.S. 604, 613 (1987). However, "[i]n some contexts, national origin discrimination is so closely related to racial discrimination as to be indistinguishable." *Bullard v. OMI Ga., Inc.*, 640 F.2d 632, 634 (5th Cir. Unit B 1981); *see also Alvarado v. El Paso Indep. Sch. Dist.*, 445 F.2d 1011 (5th Cir. 1971) (holding that a complaint by Mexican–Americans alleging racial and ethnic discrimination, "clearly states a cause of action" under § 1981).[12] In *Bullard*, the plaintiffs brought suit pursuant to only § 1981, and the district court granted summary judgment to the defendants on the grounds that the plaintiffs had only pled a national origin discrimination claim not recognized under that statute.

---

[12] In *Bonner v. City of Prichard*, Alabama, the Eleventh Circuit adopted as binding all Fifth Circuit decisions prior to the close of business on September 30, 1981. 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

640 F.2d at 633. On appeal, the Fifth Circuit reversed and held that the plaintiff's complaint did indeed assert claims for race discrimination cognizable under § 1981. *Id*. at 634. While Fifth Circuit noted in dicta that racial discrimination and national origin discrimination can be so closely related as to be nearly indistinguishable, it did not hold that there was a separate and distinct cause of action under § 1981 for national origin discrimination. *Id*.

Rather, evidence of national origin discrimination may be relevant to whether or not racial discrimination in violation of § 1981 occurred. *See Sinai v. New England Tel. and Tel. Co*., 3 F.3d 471, 474–75 (1st Cir. 2003) (upholding a jury finding of racial discrimination (Jewish/Hebrew) under § 1981 despite defendants objections that the only evidence of discrimination was disparaging remarks about the plaintiff's national origin (Israeli) because "national origin could be used, together with other evidence, to arrive at a conclusion vis-a-vis race discrimination"); *Aramburu v. Boeing Co*., 112 F.3d 1398, 1411 (10th Cir. 1997) (holding that the plaintiff's "claim of discrimination based on his Mexican-American ancestry . . . fall[s] within § 1981's protection against racial discrimination"). Thus, to the extent that Plaintiff seeks to assert a separate and distinct national origin claim under § 1981, that claim is due to be dismissed. However, the court will consider evidence of any national origin discrimination as

it relates to Plaintiff's § 1981 race discrimination claim , as well as his Title VII national origin discrimination claim.

As for the specific allegations of national origin discrimination, Plaintiff first makes general allegations about failure to protect Plaintiff against discrimination,[13] inconsistent application of policy and equal treatment and failure to provide Plaintiff with equal opportunities and proper compensation. (Doc. 16 ¶ 69). Such allegations, however, are themselves conclusory and are thus not entitled to a presumption of truth. *See Iqbal*, 556 U.S. at 678-79. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679. Plaintiff does not provide any specific factual support for these legal conclusions. As such, they are **DISMISSED**.

That being said, Plaintiff then states he was discriminated against because of his national origin in regards to overtime and lack of acknowledgment for being the first Latino/Mexican American sergeant. For the reasons discussed above, the allegations regarding overtime adequately allege an adverse employment action, but the lack of acknowledgement does not. Accordingly, Plaintiff's national origin discrimination claims are **DISMISSED** as they relate to his lack of recognition.

---

[13] Although the allegation sites failure to protect from race discrimination, the court presumes Plaintiff meant national origin discrimination. (Doc. 16 ¶ 69).

## B. Hostile Work Environment

It is unclear from the amended complaint whether Plaintiff seeks to allege a claim for hostile work environment. While such a claim is not specifically listed as one of the five counts, the amended complaint contains some allegations of a hostile work environment, harassment and the like. (Doc. 16 ¶¶ 22, 41, 50, 67, 72, 88). The court, therefore, will address it out of an abundance of caution.

Title VII may be violated where a plaintiff is forced to endure a hostile work environment arising from the cumulative effects of discriminatory harassment. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114-16 (2002); *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993). That is so despite that fact that individual episodes of such harassment may not result in any economic or otherwise tangible effects on the plaintiff's employment and may not be independently actionable under Title VII. *Morgan*, 536 U.S. at 115. To plead a hostile work environment claim under Title VII, Plaintiff has to allege facts supporting the following elements: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on her membership in the protected group; (4) it was severe or pervasive enough to alter the terms and conditions of employment and create a hostile or abusive working environment; and (5) the employer is responsible for that environment under a theory of either vicarious or direct liability. *See Edwards v. Prime, Inc.*, 602 F.3d

1276, 1300 (11th Cir. 2010); *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016); *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010).

The amended complaint randomly inserts the following harassment allegations:

- Howard subjected him to a hostile work environment as well as verbal abuse, harassment and intimidation because of his race and his national origin, (doc. 16 ¶¶ 22, 50);
- Plaintiff's supervisors continually harassed the Plaintiff because he could not speak Spanish, (*id*. ¶¶ 41, 67, 72);
- The hostile work environment affected Plaintiff's ability to concentrate on job performance and placed him in less than desirable working conditions, (*id*. ¶ 88).

Notwithstanding these allegations, the complaint is devoid of allegations sufficient to allege a claim of hostile work environment. There are no specific factual allegations that could amount to anything even resembling harassment, much less that such harassment was severe of pervasive enough to alter the terms and conditions of employment. *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22 (1993) (only when the workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the employment and create an abusive working environment," is the law violated). As such, Plaintiff failed to state a claim for hostile work environment and any such claim is **DISMISSED**.

## C. Counts 3, 4 and 5 - Retaliation

Plaintiff's last three counts allege retaliation in violation of Title VII and § 1981. (Doc. 16 at 15-19). Specifically, Plaintiff alleges he was retaliated against when he was: (1) denied overtime, (doc. 16 ¶¶ 80), (2) disciplined regarding the unusual occurrence and a letter of reprimand was placed in his filed, (*id*. ¶82); (3) replaced as supervisor over the property room and replaced by an African American male, (*id*. ¶ 86); and (4) assigned to the radio room for one day and then reassigned to report review, (*id*. ¶¶ 91, 92).[14] Defendant contends Plaintiff's claims fail because: (1) he does not allege the decision makers had knowledge of his alleged protected activity; and (2) he "failed to plead any causal connection between any protected conduct and any adverse action taken against him." (Doc. 17 at 6).

Under Title VII, it is unlawful for an employer to retaliate against an employee because the employee opposed any practice made unlawful by Title VII. *Wallace v. Georgia Dept. of Transp*., 212 F. App'x 799, 802 (11th Cir. 2006) (citing 42 U.S.C. § 2000e-3(a)). To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is a causal connection between the two events. *Brochu v. City of Riviera Beach*, 304 F.3d

---

[14] For the reasons states above, the court assumes for purposes of this motion only that these four allegations are enough to state an adverse employment action.

1144, 1155 (11th Cir. 2002)). As far as statutorily protected expression, it is undisputed that Plaintiff's March 1, 2017 EEOC complaint is protected activity. The only alleged retaliation that occurred after the EEOC complaint, however, is the denial of overtime in May 2017. All other alleged retaliation occurred before Plaintiff filed his EEOC charge. In an attempt to save his claims, Plaintiff argues that his request for a meeting with Chief Roper constitutes a protected activity. (Doc. 19 at 5). With regard to this activity, the amended complaint states as follows: "On or about January 31, 2017[,] the Plaintiff requested to meet with Chief. A.C. Roper ("Roper") an African American male, about the way he was being treated by Howard and the illegal orders that she was ordering the Plaintiff to perform." (Doc. 16 ¶¶ 24, 52, 75). Although the amended complaint is not clear as to whether this meeting took place, it does later state that "Plaintiff complained to Chief A. C. Roper about this supervisor Howard . . . ." (*Id*. ¶ 82). There are no details in the amended complaint regarding that alleged meeting.

The Eleventh Circuit has held that a complaint of "[u]nfair treatment, absent discrimination based on race, sex, or national origin," does not constitute statutorily protected activity. *Coutu v. Martin County Bd. of Cnty. Comm'rs,* 47 F.3d 1068, 1074 (11th Cir. 1995). In *Coutu*, the plaintiff filed a written grievance that "contained a conclusory allegation of racial discrimination, [but] her attorney waived this allegation at the grievance hearing." *Id*. Furthermore, during the

grievance hearing, "Coutu made no allegation and offered no proof of race or national origin discrimination; she contended only that she worked hard and deserved a better rating than" she received. *Id*. The Eleventh Circuit concluded that, absent any allegations of discriminatory treatment, Coutu's grievance did not constitute statutorily protected expression. *Id*.

While the allegations contained in the amended complaint are closer to the facts in *Coutu*, Plaintiff argues in his brief that the meeting was to "complain about discrimination and the illegal orders given to him by Howard." (Doc. 19 at 5). Additionally, a liberal reading of the complaint could result in the inference that "the way he was being treated by Howard" included the alleged "verbal abuse, harassment and intimidation because of his race and his national origin" referenced earlier in the complaint. (Doc. 16 ¶¶ 22, 24). Accordingly, while the court has some doubts as to whether the request for the meeting (or meeting itself, if it occurred) constitutes statutorily protected expression, the court will assume that it does, for purposes of this motion only.

Defendant also challenges Plaintiff's retaliation claims on causal connection grounds. To establish a causal connection, a plaintiff must show that the decision makers were aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated. *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000). To show a causal connection mere temporal

proximity between knowledge of protected activity and an adverse action must be very close. *See Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004); *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001). In addition to showing temporal proximity between the protected act and the allegedly adverse employment action, a plaintiff must show that his employer actually knew about the protected activity. *See Clark County*, 532 U.S. at 272.

From what the court can glean from the amended complaint, the decision makers for overtime and discipline appear to be Howard and Williams.[15] (*See* Doc. 16 ¶¶ 25, 30, 31, 36). It is unclear who made the decision regarding job assignments. Plaintiff contends Howard was aware of both his EEOC charge, as well as his complaint to Chief Roper. Plaintiff argues in his brief that "because all requests are required to be forwarded up the chain of command and Howard was Martinez [sic] superior officer, she was immediately aware that Martinez was making a complaint against her to the Chief." (Doc. 19 at 8). The problem with this argument, however, is that according to the allegations in the amended complaint, Plaintiff was not instructed to forward all paperwork through the chain of command until a week after he made the request to meet with Chief Roper. (Doc. 16 ¶¶ 24, 25). Additionally, there is nothing in the amended complaint to

---

[15] A person identified as Greenberg is also mentioned in connection with Plaintiff's write up regarding the unusual occurrence policy. There is no other information regarding this individual other than his or her last name.

establish that Howard had knowledge of Plaintiff's EEOC charge.  Regardless of these omissions and inconsistencies, the court will allow Plaintiff's retaliation claims to proceed.  The retaliation allegations in the amended complaint barely are enough to satisfy Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6).

## III.  CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART** as detailed above.  (Doc. 17).

**DATED** this 31st day of January, 2019.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge