# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| RANDY M. MARTINEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:18-cv-0465-JEO |
| ) | |
| CITY OF BIRMINGHAM, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION**

In this action, Plaintiff Randy M. Martinez brings claims against his former employer, the City of Birmingham, under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), and 42 U.S.C. §§ 1981 ("Section 1981"). (Doc. 16).[1] Now before the court[2] is Defendant's motion for summary judgment. (Doc. 26). The motion has been fully briefed, (docs. 26-1, 27, 28), and is now ripe for decision. For the reasons that follow, the motion for summary judgment is due to be granted in full.

---

[1] References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files ("CM/ECF") system. Unless otherwise noted, page citations to briefs, evidence, and other papers in the court file are to the page number of the electronically filed document, which may not coincide with pagination on the original "hard copy." However, pinpoint citations to all depositions are to the page of the deposition transcript.

[2] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 11).

## I. PROCEDURAL HISTORY

Plaintiff filed his original complaint[3] on March 23, 2018, in this court alleging discrimination and retaliation on the basis of race and national origin in violation of Title VII and § 1981. (Doc. 1). Defendant filed a motion to dismiss the complaint. (Doc. 6). The court granted the motion, but gave Plaintiff the opportunity to amend to adequately state a cause or causes of action. (Doc. 15). Plaintiff filed his amended complaint on October 30, 2018, again alleging discrimination and retaliation on the basis of his race and national origin. (Doc. 16). Specifically, the amended complaint contains the following five counts, all alleged violations of both Title VII and § 1981: (1) race discrimination; (2) national origin discrimination; (3) retaliation – denial of overtime; (4) retaliation – unjust discipline; and (5) retaliation. (*Id*. ¶¶ 47-93).

Defendant filed a motion to dismiss the amended complaint for failure to state a claim. (Doc. 17). The court granted in part and denied in part the motion to dismiss the amended complaint. (Doc. 20). Specifically, the court dismissed Plaintiff's race and national origin discrimination claims as they pertained to his lack of recognition

---

[3] The original complaint was 85 pages long (not counting exhibits) and contained 552 paragraphs. Each of the 11 counts contained approximately 45 paragraphs with the vast majority of those paragraphs repeating identical allegations, albeit changing a word here or there. (Doc. 1). Each count repeated approximately 20 paragraphs of factual allegations asserted in the statement of facts, as well as over 20 paragraphs of conclusory legal assumptions contained in the first count of the complaint. (*Id*.). Additionally, counts four through eight, as well as eleven, appeared to be identical, save one paragraph, purporting to state the alleged adverse employment action. (*Id*. ¶¶ 205, 251, 297, 343, 389, 531). Counts nine and ten appeared to be identical to count eight. (*Id*. ¶¶ 360-450).

and general and unspecified harassment, but, with certain caveats, the vast majority of his race and national origin discrimination claims survived the motion to dismiss. (*Id*. at 10-19). The court also dismissed Plaintiff's national origin discrimination claim brought pursuant to § 1981 and any hostile work environment claim. (*Id*. at 17-21). Despite some troublesome omissions and inconsistencies in the amended complaint with regard to Plaintiff's retaliation claims, the court permitted all such claims to proceed. (*Id*. at 21-26).

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *See id.* at 324.

The substantive law identifies which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

### III. STATEMENTOF FACTS

Plaintiff Randy Martinez, a Mexican American, began his employment as a police officer with the City of Birmingham in November of 1998, and was promoted to sergeant in June of 2011. (Doc. 26-8 ("Martinez Dep.") at 18, 43; Doc. 16 ¶ 19; Doc. 26-4 at 2). NaShonda Howard, a now-retired Captain of the City of Birmingham Police Department and an African-American female, was Plaintiff's direct supervisor from approximately October 2015 until June 2017. (Howard Aff. at 2-3). The Police Chief during all relevant times was A.C. Roper, an African-American male. (*Id*. at 3).

In approximately September 2012, Martinez was assigned as the supervisor of the property room at the Birmingham Police Department. (Martinez Dep. at 27;

4

Doc. 26-6 ("Howard Aff.") at 2). Martinez supervised both police officers and civilian personnel in the property room. (*Id.*).

In approximately January 2017, Martinez contends Captain Howard gave him an "illegal order" in the way she told him to dispose of older property in the property room. (Martinez Dep. at 54-56; Doc. 27-1 at 2; *see also* Howard Aff. at 3). Martinez testified that there is a specific process that must be followed in order to dispose of property, and Howard told him "[t]o just close them out by signing [his] name on it . . to just close them out unless it was an active case" without following the proper procedures. (Martinez Dep. at 56). Martinez alleges that Howard told him that she wanted twenty cases disposed of each week. (Doc. 27-1 at 2).

On January 31, 2017, Martinez submitted a request to meet with Police Chief Roper. (Doc. 26-10 at 2). The subject heading of the memo states, "Requesting To Meet" and the entire note states, "Chief Roper, I am respectfully requesting a meeting with you to discuss supervisory issues at your earlier convenience. My concerns are paramount to my official duties." (*Id.*). Martinez testified that he wanted to meet with Chief Roper regarding the issues related to the alleged "illegal order" by Captain Howard. (Martinez Dep. at 56).

On approximately February 6, 2017, a meeting was held with Captain Howard, Deputy Chief Irene Williams, an African-American female, Sergeant Teresa Crumbly, an African-American female, Sergeant Ronald Crumbly, an

5

African-American male, Martinez, and the civilian supervisors assigned to the Records Room. (*Id*. at 48-52; *see also* Doc. 27-1 at 2). After the meeting, Captain Howard and Deputy Chief Williams asked everyone to leave except Martinez. (*Id*.). At this point, Howard and Williams again brought up the disposal of property to free up space in the property room. (*Id*.). During the meeting, Howard "started getting loud and became very rude and just very --- just belittling and chastising and just seemed extremely upset and angry." (Martinez Dep. at 52-53).

On February 7, 2017, Martinez was given a court order to release the property of $2,318.00 that was being held in the property room. (Doc. 26-11 at 3). Martinez and the other employees searched for the money, but they could not locate it. (*Id*.).

Then, on approximately February 9, 2017, Martinez was told to report to the radio room, but he never actually went there. (*Id*. at 57). Instead, his assignment changed to report review on February 10, 2017. (*Id*. at 58). Martinez contends this assignment segregated him from his co-workers. (*Id*. at 58-59). The reassignment did not result in a change in pay, benefits or rank. (Howard Aff. at 4). Martinez was given access to a take-home car as sergeant of report review.[4] (*See* Martinez Dep.

---

[4] It is unclear from the record whether Martinez had access to a take-home car as sergeant in the property room.

at 74-75). Sergeant Crumbley[5] replaced Martinez as the supervisor in the property room. (Howard Aff. at 4).

On February 13, 2017, Martinez submitted a memo to Chief Roper titled "Notification of Missing Money in Property Room." (Doc. 26-11 at 3-4). The memo explained that $2,318.00 was missing from the property room and detailed the steps Martinez and others had taken to track and locate the missing money. (*Id.*). Chief Roper, Deputy Chief Williams and Captain Howard reviewed the memo. (Howard Aff. at 5).

On February 16, 2017, Howard initiated a disciplinary complaint against Martinez for failing to immediately notify her of the missing money per Police Department Rules and Regulations.[6] (*Id.* at 6; Doc. 26-13 at 3-4; Martinez Dep. at 59-61). Howard noted that Martinez had the opportunity to alert her about the missing property during the meeting on February 9, 2017, but failed to do so. (Doc.

---

[5] The two men switched positions. Crumbley had been assigned as the report review sergeant. (Howard Aff. at 4).

[6] Neither party submitted the Birmingham Police Department Rules and Regulations regarding this incident. However, the memo written by Howard states that Rules and Regulations 109-3 provides:

> Members of the Birmingham Police Department are required to report any unusual event or circumstance that would bring embarrassment or reflect adversely on the Birmingham Police Department. This notification should be made immediately to the member's immediate supervisory or commander id his supervisor is not available.

(Doc. 26-13 at 4). Howard relays the same information regarding this rule in her affidavit. (Howard Aff. at 6). Martinez does not dispute either statement.

26-13 at 3). She also noted that on February 9, 2017, an email went to all personnel reminding them of instances when a supervisor should be immediately notified.[7] (*Id*.; Howard Aff. at 6). One of the listed instances included in the email was "when the officer has lost or damaged city equipment or property." (Howard Aff. at 6). Additionally, on February 10, 2017, Howard sent an email to all commanders and Sergeants Martinez, Crumbley and Colston "informing them to review the directive with personnel under their supervision." (*Id*.). Despite these directives, Martinez failed to notify Howard about the missing property until February 13, 2017, six days after he discovered the property was missing. (Doc. 26-13 at 3-4).

Additionally, on February 16, 2017, Howard informed Martinez that he could no longer work overtime without prior approval. (Howard Aff. at 6). Birmingham Police Department employees work an eight-and-a-half-hour shift with thirty minutes allowed for lunch, or a nine-hour shift with one hour allotted for lunch. (*Id*.). The overtime policy requires prior approval by the immediate supervisor.[8] (Doc. 26-14 at 5). Martinez testified that Sergeants Crumbley and Colston did not have to "send anything up to request for overtime." (Martinez Dep. at 68-69).

---

[7] This email is not in the record. These statements come from Howard's affidavit as well as the memo. Plaintiff does not dispute these statements.

[8] Plaintiff states in his brief that the overtime policy is not routinely followed, (doc. 27 at 7), but does not cite any evidence in support of this statement.

8

On February 20, 2017, Martinez received a memo from Deputy Chief Williams with the subject "Request To Meet." (Doc. 27-1 at 5). The memo stated that the Chief's office had received his request to meet with Chief Roper, but that the "request is very vague" and while there was "mention of supervision issues," it did not "explain at which level, give examples or the issues, or explain who is involved." (*Id*.). The memo further stated that Chief Roper asked Williams to meet with Martinez to review his concerns, and that a meeting could be granted if "the matter cannot be addressed at the bureau level." (*Id*.). Williams asked Martinez to provide her more information "in memo form" by February 22, 2017. (*Id*.).

On February 21, 2017, Martinez sent a memo to Chief Roper and Deputy Chief Williams in response to Williams' request for more details regarding the "supervisory issues" stated in his first memo. (*Id*. at 6-8). The memo centered around problems with Captain Howard and issues regarding the records room. In particular, Martinez reported the following:

- a feeling of "hostility" and "micromanaging practices"
- criticism of his work "by too many to list"
- being "treated as a child by being talked to any kind of way by Captain Nashonda Howard"
- "the unprofessional belittling lectures as if being talked down to as a child and often times in the presence of co-workers by Captain Howard"
- a "lack of appreciation for the overall and totality of the work I've accomplished"
- "[d]espite all of that detailed work and time and sweat, I am being reassigned"

9

- being "unrealistically micromanaged with unrealistic expectations"
- being "criticized by higher ranking individuals most often and most often told to stop trying to change the department"
- "I have not followed suit by filing complaints as other who ha[ve] felt a continuously hostile environment or the harassment spewed by Captain Howard's way of 'counseling' and abrasiveness."
- "I have experienced the chastising and berating that Captain Howard has been allowed to do for many years and has only intensified with my rank."
- "I have never been spoken to in the manner she has been enabled to do since I was a kid."

(Doc. 27-1 at 6-8).

On March 1, 2017, Martinez filed a Charge of Discrimination with the EEOC alleging race and national origin discrimination and retaliation. (Doc. 16 at 23). The basis for this charge was a denial of overtime by Captain Howard, as well as the transfer out of the property room. (*Id.*). He also reported the investigation begun on February 16, 2017, for "allegedly violating rules," which he denied. (*Id.*).

Martinez was denied a request for overtime approval on May 3, 2017. (Martinez Dep. at 63). He was called into a meeting with Deputy Chief Williams and she said he could not work the overtime. (*Id.* at 64). He was not given a reason for the denial. (*Id.*).

Martinez filed a second Charge of Discrimination on June 2, 2017, again alleging discrimination on the basis of race and national origin, as well as retaliation. (*Id.* at 25, 32). This charge alleged "a continuing hostile work environment, as well as failure to train, unreasonable workload/expectations, [being] the only sworn

supervisor with a designated lunch, working out of classification, and increased scrutiny." (*Id*.). He further alleged that he was forced "to sacrifice [his] safety by transferring to patrol duty." (*Id*.).

On June 8, 2017, Martinez requested to transfer from report review to patrol. (Doc. 26-16 at 2). His request was approved on June 14, 2017, (*id*. at 4), and Martinez was assigned to work at the North Precinct of the Birmingham Police Department, (*see* Martinez Dep. at 75-76). Martinez lost access to a take-home car when he transferred to the North Precinct. (*Id*.).

Martinez received a letter of reprimand on August 8, 2017, regarding the missing money in the property room and Martinez's failure to immediately notify his supervisor. (Doc. 26-5 at 3). Howard did not make the decision to issue a letter of reprimand to Martinez, but states that she was aware that Chief Roper made the decision. (Hoard Aff. at 5). The letter of reprimand did not result in any loss of pay or benefits and did not make Martinez ineligible for promotions. (*Id*.).

Martinez supplemented his first EEOC charge on August 18, 2017. (Doc. 16 at 27). In this Supplemental Charge, Martinez alleged "harassment, intimidation and verbal[] abuse[] because of [his] accent and or national origin." (*Id*.). He again referred to the actions by Captain Howard detailed in the first charge. (*Id*.). He also stated that since he filed the two charges, he received retaliatory discipline by Captain Howard and Chief Roper. (*Id*.).

On December 19, 2017, the EEOC issued Martinez a Dismissal and Notice of Rights as to both charges. (*Id*. at 29, 31). As explained by the court's October 16, 2018 order, these letters were presumably mailed to Martinez on or about December 21, 2017.[9] (Doc. 15 at 4-6). Martinez timely filed his complaint on March 23, 2018.

## IV. DISCUSSION

The remaining claims in Martinez's amended complaint are: (1) race discrimination in violation of Title VII and § 1981; (2) national origin discrimination in violation of Title VII; and (3) retaliation in violation of Title VII and § 1981.[10] (Docs. 16 & 20). Defendant moved for summary judgment on all the remaining claims, and its brief addressed each claim. (Doc. 26; Doc. 26-1). Specifically, with regard to Plaintiff's first two claims, Defendant argues that Plaintiff's race and national origin discrimination claims fail because Plaintiff cannot establish a prima facie case[11] and, even if he could, he cannot establish pretext. (Doc. 26-1 at 11-16). Plaintiff's brief in opposition, however, does not address his discrimination claims.

---

[9] The court made this presumption for the purposes of the motion to dismiss only. (Doc. 15 at 6 n.6). Defendant, however, has not challenged the timeliness of the complaint here.

[10] Section 1981 does not provide a cause of action against state actors; instead, claims against state actors or allegations of § 1981 violations must be brought pursuant to § 1983. *Butts v. County of Volusia*, 222 F.3d 891, 892–94 (11th Cir. 2000). Plaintiff does not allege in his amended complaint that he brings his claims against Defendant pursuant to § 1983. Despite the fact that this failure is fatal to his claims, *id*., Defendant did not make this argument to the court on its motion for summary judgment. The court will, therefore, address it, but for the reasons discussed, Plaintiff's discrimination and retaliation claims fail on the merits.

[11] Defendant contends there was no adverse employment action and the City did not treat similarly situated employees outside Plaintiff's protected class more favorably. (Doc. 26-1 at 11-15).

12

(Doc. 27 at 7-9). In fact, in response to Defendant's motion to summary judgment, Plaintiff makes no argument, cites no legal authority, and identified no issues of material fact concerning his race and national origin discrimination claims. (*See, generally* Doc. 27). Instead, Plaintiff focuses solely on his retaliation claims. (*Id.*). "[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). As such, the court deems Plaintiff's discrimination claims abandoned. *See McMaster v. United States*, 177 F.3d 936, 940-41 (11th Cir. 1999) (claim may be considered abandoned when district court is presented with no argument concerning a claim included in the plaintiff's complaint); *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (concluding that a district court "could properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment"). Defendant is entitled to summary judgment as a matter of law on Plaintiff's discrimination claims. The court, therefore, moves on to Plaintiff's retaliation claims.

In general, Title VII and § 1981 prevent an employer from retaliating against an employee because the employee opposes any unlawful employment practices or because the employee has made a charge, testified, assisted, or participated in any manner related to an unlawful employment practice. *See generally* 42 U.S.C. §

13

2000e-3(a) (Title VII); *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 457 (2008) (concluding that § 1981 encompasses retaliation claims); *Bryant v. Jones*, 575 F.3d 1281, 1301 (11th Cir. 2009) (discussing the right of action for retaliation under § 1981 both pre- and post-*Humphries*). Title VII and § 1981 "have the same requirements of proof and use the same analytical framework." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in statutorily protected activity, (2) he suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse action. *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010); *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007); *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001).

Defendant contends that Plaintiff's retaliation claims fail because he did not engage in statutorily protected activity before the vast majority of his alleged adverse employment actions. (Doc. 26-1 at 19-24; Doc. 28 at 3-4). Otherwise, Defendant contends there is no causal connection between any statutorily protected activity and alleged adverse employment actions. (Doc. 26-1 at 19-20). Finally, even if Plaintiff can establish a prima facie case of retaliation, Defendant contends he cannot establish pretext. (Doc. 28 at 4-6).

### A. Statutorily Protected Activity

As explained above, the first element of a prima facie case of retaliation that Plaintiff must establish is that he engaged in statutorily protected activity. *Howard*, 605 F.3d at 1244. A complaint of "[u]nfair treatment, absent discrimination based on race, sex, or national origin," does not constitute statutorily protected activity. *Coutu v. Martin County Bd. of Cnty. Comm'rs*, 47 F.3d 1068, 1074 (11th Cir. 1995). Although Plaintiff's brief is anything but clear on what he contends is his protected activity, it appears that Plaintiff contends that the January 31st memo constitutes protected activity. (*See* Doc. 27 at 8). The court disagrees.

The January 31, 2017 memo states the following, in full: "Chief Roper, I am respectfully requesting a meeting with you to discuss supervisory issues at your earlier convenience. My concerns are paramount to my official duties." (Doc. 26-10 at 2). This memo is not protected activity for the simple reason that it does not mention discrimination in any way. In *Coutu*, the plaintiff filed a written grievance that "contained a conclusory allegation of racial discrimination, [but] her attorney waived this allegation at the grievance hearing." *Coutu*, 47 F.3d at 1074. Furthermore, during the grievance hearing, "Coutu made no allegation and offered no proof of race or national origin discrimination; she contended only that she worked hard and deserved a better rating than" she received. *Id*. The Eleventh Circuit concluded that, absent any allegations of discriminatory treatment, Coutu's

grievance did not constitute statutorily protected expression. *Id*. The same is true with Plaintiff's January 31st memo.

Additionally, Plaintiff's February 21, 2017 follow-up memo is not protected activity for the very same reason. While that memo goes into great detail regarding the alleged "supervisory issues," nowhere in that memo does Plaintiff mention any type of discrimination. (*See* Doc. 27-1 at 6-8). Instead, as outlined in detail in the statement of facts, Plaintiff complains about general hostility, micromanaging, criticism of and lack of appreciation for his work, belittling, and being treated like a child. (*Id.*). Such complaints do not constitute statutorily protected activity. *See Coutu*, 47 F.3d at 1074.

Plaintiff did, however, engage in statutorily protected activity when he filed is first EEOC charge on March 1, 2017. *See, e.g.*, *Birdyshaw v. Dillard's Inc.*, 308 F. App'x 431, 436 (11th Cir. 2009) (quoting Title VII's participation clause and explaining that "[f]iling an EEOC charge is statutorily protected activity in this regard").

**B. Adverse Employment Action and Temporal Proximity**

An adverse employment action under Title VII's anti-retaliation provision is an action "that a reasonable employee would have found . . . materially adverse." *Burgos v. Napolitano*, 330 F. App'x 187, 189 (11th Cir. 2009) (quoting *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Materially adverse

actions are those that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. and Santa Fe Ry. Co.*, 548 U.S. at 68. A plaintiff establishes a causal connection by showing that the relevant decision-maker was "aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." *Shannon v. Bellsouth Telecomm., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002). "Generally, an employee can establish that [the protected activity and adverse action] were not wholly unrelated by showing that the decisionmaker was aware of the protected conduct at the time of the adverse action" and/or that there is temporal proximity between the two. *Rudy v. Walter Coke, Inc.*, 613 F. App'x 828, 830 (11th Cir. 2015); *Strickland v. Water Works and Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1207 (11th Cir. 2001). However, "[t]emporal proximity alone does not establish a causal connection when there is unrebutted evidence that the decisionmaker was not aware of the protected activity." *Rudy*, 613 F. App'x at 830.

The only adverse employment action alleged by Martinez occurring after his statutorily protected activity is the denial of overtime on May 3, 2017.[12] Defendant essentially concedes this point. (Doc. 26-1 at 20). Defendant contends, however,

---

[12] While the Defendant addresses the August 8, 2017 letter of reprimand from Chief Roper as an adverse employment action, Plaintiff does not respond to this argument in any way. To the extent that this claim is even plead in the complaint, the court deems it abandoned. See *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (when a party fails to respond to an argument or otherwise address a claim, the court deems it abandoned).

that there is no causal connection between the March 1, 2017 EEOC charge and the May 3, 2017 overtime denial. (*Id.* at 20-21). Specifically, Defendant argues that there is no evidence that Deputy Chief Williams, the decision maker, was aware of Martinez's EEOC charge. (*Id.* at 21).

Plaintiff does not rebut this evidence that Williams did not have knowledge of the EEOC charge. Indeed, Plaintiff does not even address the causal connection element of his prima facie case. This court is not under a duty to exercise imagination or conjure what a party might have argued, but did not argue. *See Lyes v. City of Riviera Beach, Fla.,* 126 F.3d 1380, 1388 (11th Cir. 1997) (vacated on other grounds, 126 F.3d 1295 (11th Cir. 1998) & 166 F.3d 1332 (11th Cir. 1999)) (explaining that "the onus is upon the parties to formulate arguments"); *Resolution Trust Corp.*, 43 F.3d at 599 ("[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it"); *Bowden ex rel. Bowden v. Wal–Mart Stores, Inc.*, 124 F. Supp. 2d 1228, 1236 (M.D. Ala. 2000) ("[i]t is not for the court to manufacture arguments on Plaintiff's behalf"). Accordingly, a party's decision not to proffer argument or authority in response to a dispositive motion is at his peril.

The court agrees with Defendant that there is no evidence in the record that Williams had any knowledge of Plaintiff's EEOC charge. As such, Plaintiff has failed to establish a causal connection between his protected activity and the adverse

action of denied of overtime. Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

## V. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (doc. 26) is due to be granted in full. A separate order will be entered.

**DATED** this 4th day of March, 2020.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge